# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

    -vs-                                 CRIMINAL No. 09-1578 LH

LINDA DIAZ,

        Defendant

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes on for consideration of Defendant's Motion for Judgment of Acquittal (Docket No. 136), filed March 1, 2010.  The Court, having reviewed the Motion, the memoranda of the parties and the applicable law, and otherwise being fully advised, finds that the Motion is not well taken and it will be **denied**.

Following a three and one-half day trial, the Jury found Defendant Linda Diaz guilty of knowingly leaving the scene of an accident resulting in the death of Philip Espinoza, in violation of

18 U.S.C. §§ 1152[1] and 13[2] and N.M. STAT. ANN. § 66-7-201(A) and (C),[3] as charged in the

Superceding Indictment (Docket No. 52), filed December 3, 2009.  (*See* Verdict (redacted) (Docket

No. 129), filed Feb. 19, 2010.)  The Court also instructed the Jury on the lesser included offense of

---

[1]      18 U.S.C. § 1152, captioned "Laws governing," provides:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

[2]      18 U.S.C. § 13, captioned "Laws of States adopted for areas within Federal jurisdiction," provides in relevant part:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title [captioned "Special maritime and territorial jurisdiction of the United States defined"], . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).

[3]      N.M. STAT. ANN. § 66-7-201, captioned "Accidents involving death or personal injuries," provides in relevant part:

A.   The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible, but shall then immediately return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 66-7-203 NMSA 1978 [captioned "Duty to give information and render aid"].  Every such stop shall be made without obstructing traffic more than is necessary.

. . . .

C. Any person who knowingly fails to stop or to comply with the requirements of Section 66-7-203 NMSA 1978 where the accident results in great bodily harm or death is guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978 [captioned "Sentencing authority; noncapital felonies; basic sentences and fines; parole authority; meritorious deductions"].

leaving the scene of an accident resulting in great bodily harm or death,[4] and the Verdict form included that alternate verdict.  Defendant now moves for Judgment of Acquittal, pursuant to FED. R. CRIM. P. 29(c), on grounds that the government failed to present sufficient evidence to allow any rational trier of fact to find beyond a reasonable doubt that Ms. Diaz knowing failed to stop and did knowingly fail to render reasonable assistance to the victim, Philip Espinoza, and that the government failed to prove beyond a reasonable doubt that the victim was a non-Indian, as required by 18 U.S.C. § 1152 and *United States v. Prentiss*, 273 F.3d 1277 (10th Cir. 2001).

The hurdle facing Defendant is high; a jury verdict will be overturned "only . . . if 'no reasonable juror could have reached the disputed verdict.'"  *United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001) (quoting *United States v. Whitney*, 229 F.3d 1296, 1300-01 (10th Cir. 2000)).  In determining the sufficiency of the evidence, the Court reviews "the record as a whole and consider[s] the collective inferences reasonably drawn therefrom."  *Id.* (citing *United States v. Jenkins*, 175 F.3d 1208, 1215 (10th Cir. 1999)).  Where conflicting evidence exists, the Court is not to "question the jury's conclusions regarding the credibility of witnesses or the relative weight of the evidence," *id.* (citing *United States v. Springfield*, 196 F.3d 1180, 1184 (10th Cir. 1999)), but "must presume that the trier of fact resolved any such conflicts in favor of the prosecution," *id.* (quoting *Wingfield v. Massie*, 122 F.3d 1329, 1333 (10th Cir. 1997)).  The Court's determination, then, is "simply . . . 'whether [the] evidence, if believed, would establish each element of the crime.'"  *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (alteration in original)

---

[4]   *See* N.M. STAT. ANN. § 66-7-201(B) ("Any person failing to stop or to comply with the requirements of Section 66-7-203 NMSA 1978 where the accident results in great bodily harm or death is guilty of a fourth degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978.").

(quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)).  "'[T]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.'"  *Magleby*, 241 F.3d at 1312 (quoting *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000)).   The Court "must ask 'only whether taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt.'"  *Id.* at 1311-12 (alterations in original)(quoting *Springfield*, 196 F.3d at 1184).

Defendant first argues that the government did not prove beyond a reasonable doubt that she knew she was involved in an accident and that she knew the accident resulted in great bodily harm or death to Mr. Espinoza.   While recognizing that knowledge may be inferred if a defendant "deliberately blinded" herself to the existence of a fact or if a defendant was aware of the "high probability of the existence of the fact in question," Defendant Diaz maintains that the government presented no evidence of either possibility.  (Mot. J. Acquittal 11-12.)  She further contends that all of her actions were consistent with a person who did not know she had been involved in an accident involving a person and that her actions did not demonstrate that she knew she was involved in an accident that resulted in death or great bodily injury to a person.  (*Id.* at 13.)  She maintains that the government's case was based solely on inferences piled upon inferences and that mere suspicion is not enough to sustain a conviction.  (*Id.* at 13, 15.)

Specifically, Defendant claims that she was convicted through the expert testimony of the government's accident reconstruction expert Dennis O'Brien, the entirety of which, with one exception, was incredible.  (*Id.* at 14-15.)  According to Defendant, this biased and unbelievable

testimony included that the windshield damage to Defendant's vehicle could not have been caused by anything but a person; that it was not dangerous for Philip Espinoza, who was wearing dark clothing, to walk with the traffic at 4:26 a.m.; that the victim was walking on the shoulder of the highway, rather than in the right hand turn lane; and that Mr. Espinoza did not walk into the path of Defendant's vehicle.  (*Id.*)  The only testimony by Mr. O'Brien that Defendant does credit is the amount of time Mr. Espinoza's body had contact with Defendant's vehicle—"less than 1/10 of one second . . . less than a blink of an eye"—allegedly establishing that "[n]o one could have seen a body with black clothing during this time of the day."  (*Id.* at 13.)

Defendant continues to argue that the term "accident" should have been defined in the jury instructions as "necessarily involv[ing] a person" (*id.* at 11 n.5), thus linking her assertion that the government did not prove that she knew at the time of the accident that the accident occurred, to her claim that the government did not prove that she knew that the accident resulted in great bodily harm or death of a person.  During her testimony, however, Defendant admitted each element of the

crime,[5] except two:  that she knew the accident resulted in great bodily harm or death of a person and that the victim, Philip Espinoza, was a non-Indian.

Regarding the first of these, there was substantial evidence from which the Jury could, and did, find beyond a reasonable doubt that Defendant knew that she hit a person, causing great bodily harm or death.  This evidence included the facts that Defendant hit Philip Espinoza, who was six-feet two-inches tall and weighed 220 pounds, on his left calf with the right front bumper of her car, causing his body to slide over the passenger-side of the vehicle's hood, crashing into and shattering the windshield.  The victim's head hit and dented the post framing the window, causing his almost instantaneous death, and he broke off the exterior passenger-side mirror before being thrown onto the side of the road and rolling into the weeds.  This information was presented to the Jury by the government's accident reconstructionist Dennis O'Brien and also through the testimony of several other witnesses, including Dr. Ross Zumwalt, an expert in pathology, and photographs entered into evidence showing the damage to Defendant's car and the victim's injuries.  Clearly, not all of Mr.

---

[5]   The elements of the crime of knowingly leaving the scene of an accident resulting in great bodily harm or death are:

| | |
|---|---|
| *First*: | the defendant was the driver of a vehicle that was involved in an accident resulting in injury or death to a person; |
| *Second*: | the defendant knew at the time of the accident that the accident occurred; |
| *Third*: | the defendant knew that the accident resulted in great bodily harm or death of a person; |
| *Fourth*: | the defendant knowingly failed to remain at the scene and render reasonable assistance to the victim, Philip Espinoza, including the carrying or the making of arrangements for the carrying of Philip Espinoza to a physician, surgeon, or hospital for medical or surgical treatment; |
| *Fifth*: | the defendant is an Indian; |
| *Sixth:* | the victim, Philip Espinoza, was a non-Indian; |
| *Seventh:* | the accident took place in Indian Country; and |
| *Eighth:* | the accident took place within the state and district of New Mexico on or about April 4, 2009. |

(Court's Jury Instructions (Docket No. 130), Instruction No. 6, filed Feb. 16, 2010.)

O'Brien's testimony was incredible, and to the extent any of it may have been, it was for the Jury to determine his and the other witnesses' credibility and to weigh conflicting testimony.

The Jury additionally could infer Defendant's guilty knowledge from other evidence, including the her own testimony.  She testified that she knew something hit her car, stopped, looked out the windows and, not seeing anything and allegedly fearing supernatural forces at work, drove the short distance to her home.  Immediately upon her arrival, and in a state of hysteria, she telephoned her sister to come to her home, asking that her sister and teenage niece drive by and investigate the very spot where she just had encountered a supernatural force.  Obviously, the Jury was entitled to disregard Defendant's explanation that she thought her vehicle was hit by a supernatural force or by an animal, an orange barrel, or a road sign, and to conclude that her extreme emotional state, which her niece had witnessed only once before when Defendant's sister passed away, was caused by her knowledge that she had hit a person, causing great bodily harm or death.  Evidence of guilty conscience was further supported by the fact that only about seven hours later, Defendant failed to mention either the accident or that she that her vehicle had been hit by a supernatural force during a phone conversation with Matt Gutierrez.  It was at his house the evening before, her last stop before driving home, that she and others heard noises on the roof that they attributed to supernatural forces, so upsetting to everyone that Mr. Gutierrez had telephoned his uncle, seeking advice.  The same conclusion could be inferred from Defendant's statement, when she finally did call tribal authorities more than a day later, that she had "done something bad." Furthermore, the evidence and Defendant's admission that she had been drinking that evening provided strong motive explaining why she left the scene of the accident and did not immediately call the police.

Defendant additionally maintains that the government did not prove beyond a reasonable doubt that Philip Espinoza was not an Indian.  The status of the victim and that of the Defendant are essential elements of the crime in this case as 18 U.S.C. § 1152 "establishes federal jurisdiction over 'interracial' crimes, those in which the defendant is an Indian and victim is a non-Indian, or vice-versa.'"  *Prentiss*, 273 F.3d at 1278 (noting en banc majority so held regarding crime of arson in Indian country under 18 U.S.C. §§ 81 and 1152 in *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001)).  It is uncontested in this matter that Defendant is an Indian; therefore, the government had the burden of proving beyond a reasonable doubt that Philip Espinoza was not an Indian.

Acknowledging that "the issue of how one ought to determine Indian status under the federal statutes governing crimes in Indian country is extraordinarily complex and involves a number of competing policy considerations," *id.* at 1282, the Tenth Circuit has established "a two-part test for determining whether a person is an Indian for the purpose of establishing federal jurisdiction over crimes in Indian country, *id.* at 1280, 1282.  In order to be considered an Indian for  purposes of § 1152, a person must "'(1) ha[ve] some Indian blood; and (2) [be] recognized as an Indian by a tribe or by the federal government.'"  *Id.* at 1280 & n.2.  Notably, however, the court has not determined what may be an even more difficult proof, showing that a person is a not an Indian.  It has, though, had occasion to comment several times on evidence it found lacking in this regard.  Thus, testimony that a person was not a member of a particular tribe is insufficient to show non-Indian status, *id.* at 1283, as is basing this determination on a person's name, appearance, speech, and testimony of not growing up on a particular pueblo, *United States v. Romero*, 136 F.3d 1268, 1274 (10th Cir. 1998).

Here, the government went far beyond what has been found lacking in previous cases.  The victim's father, Ezequial Espinoza, testified about the extensive studies he has made since his college days of his and his wife's family genealogies, going back several hundred years.  He

8

discovered that his family is of Sephardic Jewish descent and that neither his mother nor his father had any Native American heritage.  He also found no Native American heritage in his wife's family tree.  He further testified that Philip never held himself out to be an Indian and would have described himself as a Spanish Jew.  Furthermore, none of his children are enrolled members of any tribe.  Considering this undisputed testimony, the evidence was sufficient for the Jury to find that the government met its burden of establishing beyond a reasonable doubt that the victim, Philip Espinoza, was a non-Indian.

In conclusion, the Court finds, considering both the direct and circumstantial evidence in the light most favorable to the government, together with reasonable inferences drawn therefrom, that a reasonable jury could, and did, find Defendant guilty beyond a reasonable doubt of knowingly leaving the scene of an accident resulting in the death of Philip Espinoza and Defendant's Motion for Judgment of Acquittal must be denied.

WHEREFORE,

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment of Acquittal (Docket No. 136), filed March 1, 2010, is **DENIED**.

_____

**SENIOR UNITED STATES DISTRICT JUDGE**