# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-                                                    CRIMINAL No. 09-1578 LH

LINDA DIAZ,

    Defendant

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes on for consideration of Defendant Linda Diaz's Amended Motion for a New Trial (Docket No. 135), filed March 1, 2010 ("Amended Motion"), and Defendant Linda Diaz's Supplemental Motion for a New Trial (Docket No. 142), filed March 25, 2010 ("Supplemental Motion"). The Court, having reviewed the Motions, the memoranda of the parties and the applicable law, and otherwise being fully advised, finds that the Motions are not well taken and they will be **denied**.

Following a three and one-half day trial, the Jury found Defendant Linda Diaz guilty of knowingly leaving the scene of an accident resulting in the death of Philip Espinoza, in violation of 18 U.S.C. §§ 1152[1] and 13[2] and N.M. STAT. ANN. § 66-7-201(A) and (C),[3] as charged in the

---

[1] 18 U.S.C. § 1152, captioned "Laws governing," provides:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of

Superceding Indictment (Docket No. 52), filed December 3, 2009. (*See* Verdict (redacted) (Docket No. 129), filed Feb. 19, 2010.) The Court also instructed the Jury on the lesser included offense of leaving the scene of an accident resulting in great bodily harm or death,[4] and the Verdict form included that alternate verdict. Defendant now moves for a new trial, pursuant to the Fourth, Fifth, and Sixth Amendments of the United State Constitution and FED. R. CIV. P. 33, on grounds that the government failed to disclose two instances of potentially exculpatory impeachment information

---

another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

[2]   18 U.S.C. § 13, captioned "Laws of States adopted for areas within Federal jurisdiction," provides in relevant part:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title [captioned "Special maritime and territorial jurisdiction of the United States defined"], . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).

[3]   N.M. STAT. ANN. § 66-7-201, captioned "Accidents involving death or personal injuries," provides in relevant part:

> A.  The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible, but shall then immediately return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 66-7-203 NMSA 1978 [captioned "Duty to give information and render aid"]. . . .
>
> . . . .
>
> C.  Any person who knowingly fails to stop or to comply with the requirements of Section 66-7-203 NMSA 1978 where the accident results in great bodily harm or death is guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978 [captioned "Sentencing authority; noncapital felonies; basic sentences and fines; parole authority; meritorious deductions"].

[4]   *See* N.M. STAT. ANN. § 66-7-201(B) ("Any person failing to stop or to comply with the requirements of Section 66-7-203 NMSA 1978 where the accident results in great bodily harm or death is guilty of a fourth degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978.").

regarding Dennis O'Brien, a witness called by the prosecution to testify as an expert in accident reconstruction, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

> Rule 33 of the Federal Rules of Criminal Procedure provides in relevant part:
>
> (a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. . . . .

FED. R. CRIM. P. 33.  When such a motion is based on an alleged *Brady* violation, "a defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." *United States v. Combs*, 267 F.3d 1167, 1172 (10th Cir. 2001) (citing *United States v. Quintanilla*, 193 F.3d 1139, 1149 (10th Cir. 1999)).  As to the first factor, "the Supreme Court has interpreted *Brady* broadly, in order to provide an incentive for the government to initiate 'procedures and regulations' to carry the prosecutor's 'duty to *learn* of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'" *Id.* at 1174-75 (quoting *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995)).  "The second part of *Brady* 'requires proof the evidence in question was exculpatory, or favorable, to the defendant'[; i]mpeachment evidence . . . satisfies this standard." *Id.* at 1175 (quoting *Smith v. Sec'y of N.M. Dep't Corr.*, 50 F.3d 801, 825-26 (10th Cir. 1995)).  Lastly, "a *Brady* claim 'requires proof that the evidence was material either to guilt or to punishment.'" *Id.* (quoting *Smith*, 50 F.3d at 826 (quoting *Brady*, 373 U.S. at 87)) (internal quotation omitted)).  Thus, the evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *United States v. Hughes*, 33 F.3d 1248, 1251

(10th Cir. 1994) (internal quotations omitted).

Defendant's first alleged *Brady* violation has to do with a $3 million civil judgment entered against Mr. O'Brien in 2007, following a jury trial on damages. (Am. Mot., Ex. B (Final J., *Mitchell v. O'Brien*, No. CIV 05-1155 JB/LAM (D.N.M. Dec. 31, 2007)).) The district court in that matter previously had entered a default judgment against Mr. O'Brien, who never made an appearance in the case, finding him liable for excessive use of force while he was a Deputy Sheriff with the Santa Fe Sheriff's Department.[5] *See* Order on Plaintiff's Motion for Default Judgment, *Mitchell*, No. CIV 05-1155 JB/LAM (May 9, 2006). Defendant contends she is entitled to a new trial because the prosecution suppressed this impeachment evidence concerning its expert witness, evidence which the defense could have used to attack Mr. O'Brien's credibility.

It is undisputed that the government did not inform Defendant of this judgment against Mr. O'Brien. While the prosecution has a duty not only to disclose, but also to learn of any evidence

---

[5] Reviewing the docket in No. CIV 05-1155 JB/LAM and materials provided by the government in its Supplement to Response to Defendant's Amended Motion for a New Trial ("Supplement Response") (Docket No. 143), filed May 26, 2010, it is apparent that following the alleged initial service on Mr. O'Brien of the Summons and Complaint for Civil Rights Violations, in which his name was misspelled and the City of Santa Fe and its subsidiary Santa Fe Police Department were mistakenly identified as his employer and co-defendant, neither he nor the Board of County Commissioners of the County of Santa Fe or the Santa Fe County Sheriff's Department were served with the corrected First Amended Complaint for Civil Rights Violations or with notice of any subsequent court proceedings.

The civil suit claimed that then Deputy Sheriff O'Brien used excessive force by shooting Plaintiff Walter Mitchell, "who posed no legitimate threat to [Deputy O'Brien] or others," three times in the back on November 4, 2002. (Def.'s Am. Mot., Ex. A ¶11.) On March 23, 2010, the Board of County Commissioners and Mr. O'Brien filed their Independent Action in Equity to Obtain Relief from a Judgment, seeking to set aside the Judgment. (Supp. Resp. Ex. A.) In support, they included materials from the underlying criminal case against Mr. Mitchell in the First Judicial District Court, County of Santa Fe, No. D-0101-CR-200201027, in which he was indicted on November 14, 2002, for aggravated assault upon a peace officer, namely, Dennis O'Brien, with a sword, and aggravated assault with a deadly weapon, a sword, upon one Mayre Perez. (*Id.* Ex. 4C.) Following a bench trial, Defendant Mitchell was found guilty, but mentally ill, of both charges. (*Id.* Ex. 4D.) In its Finding of Fact and Conclusions of Law the state district court specifically found that Walter Mitchell advanced three times on Sergeant O'Brien with a sword held in a threatening manner, that the third time Sergeant O'Brien had retreated as far as possible, but Mitchell continued to advance, and when Mitchell advanced to within approximately ten feet, Sergeant O'Brien, believing he was going to be attacked, shot Mitchell three times. (*Id.* Ex. 4A at 3-4.)

favorable to the defense known by those acting on its behalf,[6] it is not clear whether it suppressed such evidence in this instance: both the United States and Mr. O'Brien deny any prior knowledge of the judgment against him, maintaining that they learned of it only upon receipt of defense counsel's email informing them of the same on the morning of Saturday, February 20, 2010, (United State's Resp. Def.'s Am. Mot. Ex. 1). The government also contends that Defendant was first to learn of the judgment[7] and that this information was equally available to her earlier through the exercise of due diligence in accessing the Court's public data bases.[8]

Accepting, without deciding, that the prosecution suppressed this evidence, questions also arise as to whether it is favorable to the Defendant. While impeachment evidence certainly can be exculpatory, it is unclear that the evidence at issue here even would have been admissible at trial. Defendant has failed to show or make any argument as to how a prior default judgment against a police officer for alleged use of excessive force in any way later implicates the veracity of that

---

[6] There is some confusion expressed in the briefing as to Mr. O'Brien's status in this matter. He testified at trial, however, that at the time of the accident at issue in this case, he was a lieutenant with the Santa Fe County Sheriff's Office and responded to the scene on Pojoaque Pueblo as the case agent or lead investigator, as the victim was identified as not being Native American. Once Defendant Diaz was identified as a suspect, however, jurisdiction was assumed by federal authorities. Mr. O'Brien apparently continued on the case as an accident reconstructionist, work which he had pursued since 1995, both with the Sheriff's Office and with private companies. He retired from the Sheriff's Office in June 2009, continuing his work as a private traffic accident reconstructionist. Given these facts, the Court accepts that Mr. O'Brien was at least initially a member of the prosecution team. *Cf. Sleeper v. Spencer*, 453 F. Supp. 2d 204, 210-13 (D. Mass. 2006) (finding not unreasonable and affirming lower court's ruling that prosecutor had not violated duty to disclose with regard to sexual misconduct investigation and civil action against expert forensic psychologist, which information was unknown to prosecutor and prosecution team, because expert was not member of the prosecution team to whom such duty to disclose extends), *aff'd*, 510 F.3d 32 (1st Cir. 2007).

[7] According to Defendant, her counsel learned of the judgment the evening of Thursday, February 18, 2010, (Am. Mot. at 2), but he elected not to bring it to the Court's attention the next day. While both sides had rested their cases on Thursday, the Court allowed the defense to reopen its case Friday morning to read a stipulation into the record before the closing arguments commenced. Thus, through Defendant's silence regarding the default judgment against Mr. O'Brien, the Court was deprived of any opportunity to address alleged potential harm regarding this issue during the trial.

[8] Indeed, Defendant apparently confirmed the judgment against Mr. O'Brien on February 20 and obtained documents relating to it by Sunday, February 21, 2010. (*See* United States' Resp. Def.'s Am. Mot., Ex. 2.)

individual as an expert witness in a subsequent case.[9] *See, e.g., United States v. Page*, 808 F.2d 723, 730 (10th Cir. 1987) ("FED. R. EVID. 608(b) permits use of prior bad acts . . . to impeach a witness only if 'probative of truthfulness or untruthfulness.'. . . Evidence of [arrest for burglary and assault, based on a domestic dispute,] was not probative of [informant's] credibility." (internal citations omitted)); *United States v. Hill*, 550 F. Supp. 983 (E.D. Pa. 1982) (disorderly person, trespass, and false imprisonment charges against DEA Agent "are in no way probative of [Agent's] character for truthfulness or untruthfulness and . . . do not fall within rule 608(b)."), *aff'd mem.*, 716 F.2d 893 (3d Cir. 1983), *cert. denied*, 464 U.S. 1039 (1984). Perhaps realizing this defect, she also argues that the fact that Mr. O'Brien claims not to have known about the judgment is itself potential impeachment material. The Court declines to accept this attempted bootstrapping as support for finding a *Brady* violation.

Regardless, even if the Court were to accept that the existence of the default judgment is admissible impeachment evidence, it is not material to the issue of Defendant's guilt: the reliability

---

[9] FEDERAL RULE OF EVIDENCE 608 provides in relevant part:

(b) **Specific instances of conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, *if probative of truthfulness or untruthfulness*, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . .

FED. R. EVID. 608(b) (emphasis added).

The Court also seriously questions whether evidence of the default judgment against Mr. O'Brien, even if found to be proper impeachment material, could survive the balancing required by FEDERAL RULE OF EVIDENCE 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." This is especially true in light of Defendant's expressed desire to investigate the facts of the civil suit and the underlying criminal prosecution (Am. Mot. 7) and to have an evidentiary hearing to determine whether Mr. O'Brien used excessive force (Def.'s Reply Am. Mot. 10), much less her stated intent to have Mr. O'Brien "address why he shot a person in the back three times" (*id.* at 8) and her argument that the judgment evidences Mr. O'Brien's bias as he benefits from submitting testimony favorable to the government in order to secure additional employment to help him "pay off the $3 million dollar debt" (*id.* at 9).

of Mr. O'Brien's testimony was in no way determinative of her guilt or innocence in this case. *Cf. United States v. Torres,* 569 F.3d 1277, 1281 (10th Cir. 2009) ("In the event that 'the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule [of *Brady*].'" (quoting *Giglio*, 405 U.S. at 154)).

Defendant maintains that impeachment of Mr. O'Brien's expert testimony would have been material and created a reasonable doubt of her guilt in relation to three opinions he offered: 1) that Mr. Espinoza did not step into the path of Defendant's vehicle; 2) that Mr. Espinoza was walking on the shoulder, as opposed to the right-hand turn lane, of the highway; and 3) that it is not dangerous for a person dressed in a dark leather jacket and dark pants to walk with the traffic on a dangerous highway at 4:26 a.m. in the dark, as Mr. Espinoza did. (Am. Mot. 9.) Defendant contends that each of these opinions had a direct impact on the Jury's determination of whether Defendant was guilty of having knowledge that she hit a person and then left the scene of an accident and whether she was aware of a high probability that the victim was walking on the right turning lane of a dangerous highway. (*Id.* at 9-10.)

The Court is in no way convinced by Defendant's argument, which she appears to base on the proposition that if she would not have known that a person was walking on the highway, she could not be guilty of the crime of knowingly leaving the scene of an accident resulting in great bodily harm or death.[10] (*See* Def.'s Reply Am. Mot. 11-12.) Each of Mr. O'Brien's opinions,

---

[10] The elements of the crime of knowingly leaving the scene of an accident resulting in great bodily harm or death are:

*First*: the defendant was the driver of a vehicle that was involved in an accident resulting in injury or death to a person;
*Second*: the defendant knew at the time of the accident that the accident occurred;
*Third*: the defendant knew that the accident resulted in great bodily harm or death of a person;
*Fourth*: the defendant knowingly failed to remain at the scene and render reasonable assistance to the victim, Philip Espinoza, including the carrying or the making of arrangements for the carrying of Philip Espinoza to a physician, surgeon, or hospital for medical or surgical

however, is irrelevant to the critical element of the crime at issue: that Defendant knew the accident resulted in great bodily harm or death of a person. Whether the victim may or may not have engaged in risky behavior or himself been negligent has no bearing on Defendant's guilt.

As the Court discusses in its Memorandum Opinion and Order denying Defendant's Motion for Judgment of Acquittal, also entered this day, there was substantial evidence from which the Jury could find beyond a reasonable doubt that Defendant knew that she hit a person, causing great bodily harm or death:

> This evidence included the facts that Defendant hit Philip Espinoza, who was six-feet two-inches tall and weighed 220 pounds, on his left calf with the right front bumper of her car, causing his body to slide over the passenger-side of the vehicle's hood, crashing into and shattering the windshield. The victim's head hit and dented the post framing the window, causing his almost instantaneous death, and he broke off the exterior passenger-side mirror before being thrown onto the side of the road and rolling into the weeds.

((Docket No. 155) at 6.) This information was presented not only by Mr. O'Brien and also through the testimony of several other witnesses, including Dr. Ross Zumwalt, an expert in pathology, and photographs entered into evidence showing the damage to Defendant's car and the victim's injuries. Additionally, the Jury

> could infer Defendant's guilty knowledge from other evidence, including the her own testimony. She testified that she knew something hit her car, stopped, looked out the windows and, not seeing anything and allegedly fearing supernatural forces at work, drove the short distance to her home. Immediately upon her arrival, and in a state of hysteria, she telephoned her sister to come to her home, asking that her sister and teenage niece drive by and investigate the very spot where she just had

---

        treatment;
*Fifth*:    the defendant is an Indian;
*Sixth:*    the victim, Philip Espinoza, was a non-Indian;
*Seventh:*  the accident took place in Indian Country; and
*Eighth:*   the accident took place within the state and district of New Mexico on or about April 4, 2009.

(Court's Jury Instructions (Docket No. 130), Instruction No. 6, filed Feb. 16, 2010.)

>encountered a supernatural force. Obviously, the Jury was entitled to disregard Defendant's explanation that she thought her vehicle was hit by a supernatural force or by an animal, an orange barrel, or a road sign, and to conclude that her extreme emotional state, which her niece had witnessed only once before when Defendant's sister passed away, was caused by her knowledge that she had hit a person, causing great bodily harm or death. Evidence of guilty conscience was further supported by the fact that only about seven hours later, Defendant failed to mention either the accident or that she that her vehicle had been hit by a supernatural force during a phone conversation with Matt Gutierrez. It was at his house the evening before, her last stop before driving home, that she and others heard noises on the roof that they attributed to supernatural forces, so upsetting to everyone that Mr. Gutierrez had telephoned his uncle, seeking advice. The same conclusion could be inferred from Defendant's statement, when she finally did call tribal authorities more than a day later, that she had "done something bad." Furthermore, the evidence and Defendant's admission that she had been drinking that evening provided strong motive explaining why she left the scene of the accident and did not immediately call the police.

(*Id.* at 7.)

Finally, this case is not one in which a defendant only belatedly discovers grounds on which to attack a witness's credibility. Defendant vigorously questioned Mr. O'Brien's credibility at trial and specifically addressed each of the three opinions now at issue. Thus, the Court has no difficulty in finding that there is no reasonable probability that the alleged impeachment evidence regarding the default judgment against Mr. O'Brien would have affected the outcome of this trial. This evidence is not material and it is not a *Brady* violation.

Defendant's second alleged *Brady* violation concerns another lawsuit involving Mr. O'Brien in the mid-1990s when he was an officer with the San Juan Tribal Police Department and a member of the Eight Northern Pueblos SWAT Team. On March 17, 2010, the government informed Defendant that Mr. O'Brien, along with a number of other officers and federal, tribal, and state

entities, was sued for alleged civil rights violations.[11] (Supp. Mot. Ex. A.) The suit stemmed from the execution of an arrest warrant in the early morning hours of April 10, 1994, at the home of Gerald Viarrial on Pojoaque Pueblo. Mr. O'Brien was one of the SWAT team members toward the rear of the "stack" when officers attempted entry of the residence. Mr. Viarrial shot and killed the first officer to enter and injured a second. Subsequently, he was charged in federal court with first degree murder and assault with intent to commit murder.[12] While awaiting trial Mr. Viarrial made a formal request for a civil rights investigation into his allegations that the SWAT team employed excessive force in his arrest. (*Id.*; United States's Resp. Ex. 1 at 5.) The Civil Rights Division of the Department of Justice ("DOJ") conducted the investigation, found no wrongdoing, and terminated the case with a "short form" closure, which required no internal memoranda and resulted in no charges or findings. (Supp. Mot. Ex. A.) Following his acquittal of the criminal charges on a theory of self defense, Mr. Viarrial, his children, and their mother, filed the civil action in federal court, claiming violation of their civil rights and liberties, conspiracy, assault, battery, false imprisonment, and infliction of emotional distress. (United States's Resp. Ex. 4.) The case was resolved by way of a confidential settlement agreement.[13]

In her Supplemental Motion, Defendant basically makes the same arguments that she did regarding the *Mitchell* case, and for the same reasons, the Court will deny this Motion. As before, none of the allegations in the civil suit, are shown to be in any way probative of Mr. O'Brien's

---

[11] *Corriz v. Baca*, CV 96-0475 JP/JHG (D.N.M. filed Apr. 9, 1996).

[12] *United States v. Gerald James Viarrial*, CR 94-0279 MV (D.N.M. filed Apr. 11, 1994).

[13] The United States indicated that it would supplement its Response with a copy of the confidential settlement agreement, if the trial judge approved its motion requesting such authorization. (United States' Resp. 3 n.1.) Although the motion was granted, *Corriz*, CV 96-0475 JP, Unopposed Order to Unseal Documents (filed Apr. 19, 2010), the United States has not so supplemented the record here.

truthfulness or untruthfulness, and therefore, could not be use to impeach his testimony.[14] Furthermore, as discussed *supra*, Mr. O'Brien's testimony was, in any event, not material to the issue of Defendant's guilt or innocence. Thus, Defendant's contention that Mr. O'Brien provided biased testimony against her because he knew Mr. Viarrial was her cousin and he might have known that Mr. Viarrial was defense witness Stephanie Crosby's sister, both pure speculation without any evidentiary support, similarly fails.

WHEREFORE,

**IT IS HEREBY ORDERED** that Defendant Linda Diaz's Amended Motion for a New Trial (Docket No. 135), filed March 1, 2010, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Linda Diaz's Supplemental Motion for a New Trial (Docket No. 142), filed March 25, 2010, is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[14] Again Defendant apparently believes that she should be allowed to conduct a detailed investigation into all of the underlying proceedings in the *Viarrial* cases. (*See, e.g.*, Supp. Mot. at 8 (possible testimony by Mr. O'Brien at criminal trial "would have to be weighed against *the fact that Mr. Viarrial was acquitted*" (emphasis in original)), 9 (requests "evidentiary hearing to address the circumstances of how this information [Viarrial cases] was obtained" by prosecutor), 11-12 (should be afforded opportunity to investigate matters associated with Mr. O'Brien's involvement in SWAT incident and "favorable result" [sic] of DOJ investigation); Def. Linda Diaz's Reply at 2 (whether Mr. O'Brien remembers being interviewed by DOJ or sought counsel "may be relevant"), 4-5 (requests evidentiary hearing to address "exact circumstances" of how information obtained by prosecutor, listing seven specific questions to be answered, including when prosecutor learned of evidence, how he obtained this knowledge, from whom he obtained the information, why Mr. O'Brien did not disclose the information to prosecutors, why necessary for prosecutor to discuss issue with Mr. Viarrial's attorney).) Without expounding on the speculative nature of such a quest, the Court reiterates the insurmountable obstacles Defendant faces in FEDERAL RULES OF EVIDENCE 403 and 608(b). *See supra* note 9.