IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

    Plaintiff,

  -vs-                                        CRIMINAL No. 09-1578 LH

LINDA DIAZ,

    Defendant


**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes on for consideration of Defendant's Motion Regarding Release Pending Appeal, Pursuant to 18 U.S.C. Section 3143(b)(1)(A) and (B)(i) and (ii) (Docket No. 164), filed November 1, 2010. The Court, having reviewed the Motion, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds that the Motion is not well taken and it will be **denied**.

    On February 19, 2010, following a three and one-half day trial, a Jury found Defendant Linda Diaz guilty of knowingly leaving the scene of an accident resulting in the death of Philip Espinoza, in violation of 18 U.S.C. §§ 1152 and 13 and N.M. STAT. ANN. § 66-7-201(A) and (C), as charged in the Superceding Indictment (Docket No. 52), filed December 3, 2009. (*See* Verdict (redacted) (Docket No. 129), filed Feb. 19, 2010.) On November 2, 2010, the Court sentenced Defendant to a term of imprisonment of twelve months and one day in the custody of the United

States Bureau of Prisons. (Judgment (Docket No. 167), filed Nov. 17, 2010.) Defendant now moves for release pending appeal of her conviction to the Tenth Circuit Court of Appeals.

Section 3143 of Title 18 of the United States Code provides that the Court "shall" detain a convicted criminal defendant pending appeal unless it finds "(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . . and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal, an order for new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.  18 U.S.C. § 3143(b)(1)(A)-(B).  The Tenth Circuit has drawn a distinction between the burden of proof a defendant must meet to prove § 3143(b)(1)(A), which requires clear and convincing evidence that a defendant is not a flight risk or danger to the community, and § 3143(b)(1)(B), which requires a defendant to prove by a preponderance of the evidence that the appeal is not for purpose of delay and that it raises a substantial question of law or fact, which if determined favorably to defendant on appeal, is likely to result in reversal or an order for a new trial. *United States v. Affleck*, 765 F.2d 944, 953 & n.15 (10th Cir. 1985).

The government does not contest that Defendant is not likely to flee or that she does not pose a danger to the community, and the Court agrees. Instead, the only question at issue is whether the Defendant's appeal raises a substantial question of law or fact that is likely to result in reversal or a new trial. This determination requires a two-step analysis. *Id.* at 952.  First, the Court must decide whether the appeal raises a "substantial" question of law or fact. *Id.* (citing *United States v. Miller*, 753 F.2d 19, 24 (3d Cir. 1985)).  Second, the Court must determine whether the substantial

2

question of law or fact, if decided favorably to defendant on appeal, is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed. *Id.*

Regarding the first prong, "a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Id.* (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (internal quotation marks omitted)). A question that has not been decided by controlling precedent, however, may not necessarily be "substantial" under § 3143(b)(2), and this determination must be made on a case-by-case basis. *See id.* (citing *Giancola*, 754 F.2d at 901). The second prong involves a determination of "'the significance of the substantial issue to the ultimate disposition of the appeal,'" considering factors such as whether the question of law or fact, though substantial, is harmless, will have no prejudicial effect, or was insufficiently preserved. *Id.* at 953 (quoting *Miller*, 753 F.2d at 23). In other words, the question must be "'so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.'" *Id.* (quoting *Miller*, 753 F.2d at 23).

Defendant raises two issues in her Motion.[1] The first regards the proof offered by the United States as to the status of the victim in this case: Defendant argues that the United States did not prove beyond a reasonable doubt that Mr. Espinoza was a non-Indian. The second issue concerns the Jury Instructions, specifically, the fact that the Court did not include an instruction defining the word "accident."

---

[1] In its Response the government addresses a possible third issue brought by Defendant, error in the elements required for conviction of the lesser included offense. ((Docket No. 166) at 8.) Defendant, however, explicitly addresses only two issues in her Reply. ((Docket No. 169) at 1.) In any case, the Court agrees with the government that any possible error in the Jury Instructions regarding the lesser included offense was mooted by Defendant's conviction of the greater offense and, thus, could not be the basis on appeal for reversal or award of a new trial by the Tenth Circuit.

The Court previously has addressed both of these issues, rejecting Defendant's arguments every time. With regard to the question of the victim's status, the Court discussed this issue in some detail when it denied Defendant's Motion for Judgment of Acquittal:

> Defendant additionally maintains that the government did not prove beyond a reasonable doubt that Philip Espinoza was not an Indian. The status of the victim and that of the Defendant are essential elements of the crime in this case as 18 U.S.C. § 1152 "establishes federal jurisdiction over 'interracial' crimes, those in which the defendant is an Indian and victim is a non-Indian, or vice-versa.'" [*United States v.*] *Prentiss*, 273 F.3d [1277,] 1278 [10th Cir. 2001] (noting en banc majority so held regarding crime of arson in Indian country under 18 U.S.C. §§ 81 and 1152 in *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001)). It is uncontested in this matter that Defendant is an Indian; therefore, the government had the burden of proving beyond a reasonable doubt that Philip Espinoza was not an Indian.
>
> Acknowledging that "the issue of how one ought to determine Indian status under the federal statutes governing crimes in Indian country is extraordinarily complex and involves a number of competing policy considerations," *id.* at 1282, the Tenth Circuit has established "a two-part test for determining whether a person is an Indian for the purpose of establishing federal jurisdiction over crimes in Indian country, *id.* at 1280, 1282. In order to be considered an Indian for purposes of § 1152, a person must "'(1) ha[ve] some Indian blood; and (2) [be] recognized as an Indian by a tribe or by the federal government.'" *Id.* at 1280 & n.2. Notably, however, the court has not determined what may be an even more difficult proof, showing that a person is a [sic] not an Indian. It has, though, had occasion to comment several times on evidence it found lacking in this regard. Thus, testimony that a person was not a member of a particular tribe is insufficient to show non-Indian status, *id.* at 1283, as is basing this determination on a person's name, appearance, speech, and testimony of not growing up on a particular pueblo, *United States v. Romero*, 136 F.3d 1268, 1274 (10th Cir. 1998).
>
> Here, the government went far beyond what has been found lacking in previous cases. The victim's father, Ezequial Espinoza, testified about the extensive studies he has made since his college days of his and his wife's family genealogies, going back several hundred years. He discovered that his family is of Sephardic Jewish descent and that neither his mother nor his father had any Native American heritage. He also found no Native American heritage in his wife's family tree. He further testified that Philip never held himself out to be an Indian and would have described himself as a Spanish Jew. Furthermore, none of his children are enrolled members of any tribe. Considering this undisputed testimony, the evidence was sufficient for the Jury to find that the government met its burden of establishing beyond a reasonable doubt that the victim, Philip Espinoza, was a non-Indian.

(Memo. Op. and Order (Docket No. 156), filed Aug. 17, 2010, at 8-9 (alterations in second paragraph in original).)

Defendant argues that the proof of Philip Espinoza's non-Indian status is insufficient because it was based solely on his father's non-objective testimony. Ezequial Espinoza, however, did not merely offer his opinion as to his son's status, rather he testified at length concerning the extensive genealogical research he had conducted over many years prior to his son's death. Additionally, Defendant's complaint that "[t]he United States *did not introduce the testimony of one tribal enrollment officer*," such as the enrollment officer from the Pueblo of Pojoaque, is completely without merit. (Def.'s Reply 2.) The Tenth Circuit specifically held in *Prentiss* that testimony that an individual was not a member of a particular tribe is insufficient to prove non-Indian status.[2] 273 F.3d at 1283. It also is unclear just what Defendant believes the introduction of the victim's birth certificate might have added to the evidence and the Court is similarly perplexed as to what significance is to be drawn from a letter[3] appended to Defendant's Reply.

In its Memorandum Opinion and Order denying Defendant's Motion for Judgment of Acquittal, the Court also addressed whether the term "accident" should have been defined in the Jury Instructions:

> Defendant continues to argue that the term "accident" should have been defined in the jury instructions as "necessarily involv[ing] a person" ([Mot. J. Acquittal] 11 n.5), thus linking her assertion that the government did not prove that she knew at the time of the accident that the accident occurred, to her claim that the government did not prove that she knew that the accident resulted in great bodily

---

[2] The Court agrees with the government and Defendant that this cannot mean that in order to prove a person's non-Indian status, the government would be required to offer such testimony from tribal enrollment officers of each of the recognized 564 tribes. (*See* United States' Resp. 6; Def.'s Reply 2.)

[3] The redacted letter apparently was e-mailed by Defendant to her counsel on November 15, 2010. (*Id.* at 2 n.1.) It is alleged to have been received by the Pueblo of Pojoaque from a Mr. Espinoza, inquiring whether his mother was a member of the tribe and seeking her tribal records. (*Id.*; Def.'s Mot. Supp. (Docket No. 170) Ex. 1.)

> harm or death of a person. During her testimony, however, Defendant admitted each element of the crime,[4] except two: that she knew the accident resulted in great bodily harm or death of a person and that the victim, Philip Espinoza, was a non-Indian.

((Docket No. 156) at 5-6 (second alteration added and footnote renumbered).) Defendant concedes that this issue is not as substantial as is the question of the victim's status. (Def.'s Reply 3.) Indeed, given Defendant's testimony at trial and the fact that the Jury convicted her of the greater offense, the Court agrees with the government that this argument is without merit.

To conclude, it is true that the Tenth Circuit has not instructed lower courts exactly what proof must be made to establish non-Indian status. Additionally, neither that court nor New Mexico courts have construed the elements or formulated jury instructions for the crime of knowingly leaving the scene of an accident resulting in great bodily harm or death. But even in the face of no clear controlling precedent, the Court cannot find under the facts and circumstances of this case that Defendant raises substantial questions that are close or likely to be decided the other way. Finally,

---

[4] The Jury was instructed in this case that the elements of the crime of knowingly leaving the scene of an accident resulting in great bodily harm or death are:

*First*:    the defendant was the driver of a vehicle that was involved in an accident resulting in injury or death to a person;
*Second*:   the defendant knew at the time of the accident that the accident occurred;
*Third*:    the defendant knew that the accident resulted in great bodily harm or death of a person;
*Fourth*:   the defendant knowingly failed to remain at the scene and render reasonable assistance to the victim, Philip Espinoza, including the carrying or the making of arrangements for the carrying of Philip Espinoza to a physician, surgeon, or hospital for medical or surgical treatment;
*Fifth*:    the defendant is an Indian;
*Sixth:*    the victim, Philip Espinoza, was a non-Indian;
*Seventh:*  the accident took place in Indian Country; and
*Eighth:*   the accident took place within the state and district of New Mexico on or about April 4, 2009.

(Court's Jury Instructions (Docket No. 130), Instruction No. 6, filed Feb. 16, 2010.)

to the extent Defendant maintains that "exceptional circumstances" support her Motion to remain out of custody pending appeal (*see* Def.'s Mot. 4 & n.1), the Court finds none.

WHEREFORE,

**IT IS HEREBY ORDERED** that Defendant's Motion Regarding Release Pending Appeal, Pursuant to 18 U.S.C. Section 3143(b)(1)(A) and (B)(i) and (ii) (Docket No. 164), filed November 1, 2010, is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**